**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MATTHEW BRYANT,

                Petitioner,

                                  CIVIL NO. 2:07-CV-14033

v.                             HONORABLE MARIANNE O. BATTANI
                             UNITED STATES DISTRICT COURT

MARY BERGHUIS,

                Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND GRANTING PETITIONER LEAVE TO APPEAL IN FORMA PAUPERIS

Matthew Bryant, ("Petitioner"), presently confined at the Bellamy Creek

Correctional Facility in Ionia, Michigan, has filed a petition for writ of habeas

corpus pursuant to 28 U.S.C. § 2254. [1] In his application, filed *pro se*, petitioner

challenges his convictions for first-degree premeditated murder, M.C.L.A.

750.316(1)(a); first-degree felony murder, M.C.L.A. 750.316(1)(b); kidnapping,

M.C.L.A. 750.349; assault with intent to do great bodily harm, M.C.L.A. 750.84;

first-degree criminal sexual conduct, M.C.L.A. 750.520b(1)(f); and being a fourth

felony habitual offender, M.C.L.A. 769.12. For the reasons stated below, the

---

[1] When petitioner originally filed his petition for writ of habeas corpus, he was incarcerated at the Brooks Correctional Facility, but has since been transferred to the Bellamy Creek Correctional Facility. The only proper respondent in a habeas case is the habeas petitioner's custodian, which in the case of an incarcerated habeas petitioner would be the warden of the facility where the petitioner is incarcerated. *See Edwards Johns,* 450 F. Supp. 2d 755, 757 (E.D. Mich. 2006); *See also* Rule 2(a), 28 foll. U.S.C. § 2254. Normally, the Court would order that the caption of the case be amended to reflect that the proper respondent in this case is the warden of the Bellamy Creek Correctional Facility, the current location of petitioner. However, because the Court is denying the petition, it will not do so in this case. *See Logan v. Booker,* No. 2007 WL 2225887, * 1, n. 1 (E.D. Mich. August 1, 2007).

petition for writ of habeas corpus is **DENIED.**

## I. Background

Petitioner was convicted of the above offenses following a jury trial in the Wayne County Circuit Court.  Petitioner's felony murder conviction was vacated at sentencing on Double Jeopardy grounds.

Ethel Woodger testified that she was awakened by someone banging on her front door in the early morning hours of July 1, 2004.  Woodger heard her nineteen-year-old son, Michael Woodger, scream, "Ma, it's me, open the door!" Before Ethel Woodger could open it, the door was broken in.  Petitioner came into the house immediately behind Michael Woodger.  Petitioner had his arm around Michael's throat and had pushed a knife inside Michael's chest.  Petitioner punched and kicked Michael as he dropped to the ground, saying, "Bitch, you ain't gonna call me a tree jumper."  Ethel Woodger punched petitioner as hard as she could, in an attempt to save her son.  Petitioner threw Ethel Woodger into a door jamb, where she hit her head.  Petitioner began coming after Ethel Woodger with a knife as she pleaded for her life.  Petitioner told Ethel Woodger to "shut the fuck up" and stated, "Bitch, by the time you call the ambulance he dead.  I know he dead."

Ethel Woodger's daughter, Juaniva, rant to the front door after being awoken by her mother's screams.  Juaniva witnessed her mother falling while holding the back of her head.  Juaniva testified that she observed petitioner

standing over her brother Michael with a knife while Michael wheezed and gasped for air.  When petitioner began heading towards her mother, Juaniva walked toward petitioner.  Petitioner grabbed Juaniva by the hair and stabbed her in her left side, while stating, "You're the one I wanted.  Come here, bitch."  When Juaniva fell, petitioner picked her up by her shirt and pushed her out the front door.  Outside on the porch, petitioner told Juaniva, "Don't waste your time calling the ambulance, that motherfucker is dead."

Petitioner then punched out a window, which caused Juaniva's niece, Shaneida, to come to the door.  When Juaniva noticed petitioner heading towards Shaneida, she ran off the porch in an attempt to distract him.  Juaniva tried to run down the street and scream for help, but petitioner grabbed her, held the knife to her side, and warned her if she tried to run again, he would kill her.  Petitioner ignored Juaniva's pleas to call an ambulance.

Petitioner dragged Juaniva down the street, although he stopped and kissed her when a police car drove by so that Juaniva would be unable to alert the police.  After the police passed, petitioner threw Juaniva over a gate and dragged her into the backyard of a house.  When the homeowner came out and asked what was happening, petitioner warned Juaniva he would kill her if she said the wrong thing, so she told the man they were looking for her shoe.  When the man left, petitioner threw Juaniva over the gate and then jumped the gate himself.  Petitioner then dragged Juaniva across the street to the wooded area of

a cemetery.  At the cemetery, petitioner informed Juaniva that he had waited two hours for her brother Michael to come home and had told people that he was going to kill her brother.  Petitioner also told Juaniva she was lucky that he did not have a gun, because he would have shot everyone inside the house as well as Michael.  When Juaniva insisted that her brother would be okay, petitioner responded, "Your brother ain't gone make it.  I know where I stabbed him.  That nigga [is] dead."  When the police drove by a second time, petitioner pushed Juaniva so she was lying down.  When Juaniva asked petitioner to just lay her in the middle of the street and leave, petitioner replied, "Do I look stupid?"  Petitioner then removed Juaniva's pants and underwear and sexually assaulted her.  When Juaniva said she needed medical help, petitioner ignored her request.

Petitioner then tried to force Juaniva walk to a friend's house, but when she fell and told him that she was unable to walk, petitioner told her to get up and to quit acting like a baby.  Juaniva told petitioner that he was going to have to kill her because she could not walk any further.  Petitioner then started feeling in his jacket for his knife.  When petitioner realized he did not have it, he told Juaniva not to move and that he would be right back.

As soon as petitioner was out of sight, Juaniva ran and obtained help from a nearby homeowner.  Juaniva was rushed to Grace Hospital, where she had surgery to repair a ruptured small intestine.  Michael Woodger died as a result of his stab wound.

Petitioner was arrested for the crime later that day. Petitioner admitted stabbing Michael, but said he did it because he thought Michael was coming after him. Petitioner also admitted stabbing Juaniva, who he claimed was his girlfriend, but said that it was a mistake. Petitioner denied intending to kill Michael.

Petitioner's conviction was affirmed on appeal. *People v. Bryant*, No. 260768 (Mich. Ct. App. September 14, 2006); *lv. den.* 477 Mich. 1004; 726 N.W. 2d 45 (2007).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. The trial court improperly nullified petitioner's peremptory challenges against two jurors, finding that defense counsel had exercised the challenges in a racially discriminatory manner.

II. Petitioner was denied his constitutional right to be present and was denied due process and his Sixth Amendment right to confrontation when the trial court twice removed Petitioner from his trial.

III. The evidence was insufficient to sustain petitioner's conviction of first degree premeditated murder and first degree felony murder.

IV. The evidence was insufficient to sustain petitioner's conviction of kidnapping.

## II. Standard of Review

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established

> Federal law, as determined by the Supreme Court of
> the United States; or
>
> (2)    resulted in a decision that was based on an
>         unreasonable determination of the facts in light of the
>         evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if

the state court arrives at a conclusion opposite to that reached by the Supreme

Court on a question of law or if the state court decides a case differently than the

Supreme Court has on a set of materially indistinguishable facts.  An

"unreasonable application" occurs when the state court identifies the correct

legal principle from a Supreme Court's decision but unreasonably applies that

principle to the facts of the prisoner's case. *Williams v. Taylor*, 529 U.S. 362,

412-13 (2000).  A federal habeas court may not find a state adjudication to be

"unreasonable" "simply because that court concludes in its independent

judgment that the relevant state-court decision applied clearly established

federal law erroneously or incorrectly." *Id.* at 411.

### III.  Discussion

### A.  Claim # 1.  The peremptory challenge claim.

Petitioner first claims that he was deprived of his due process rights when

the trial court both *sua sponte*, and in response to the prosecutor's objections,

refused to permit petitioner to peremptorily challenge two white jurors, without

determining whether the prosecutor had made out a *prima facie* case of

discrimination on petitioner's part and in rejecting the race-neutral reasons offered by defense counsel for attempting to peremptorily excuse these jurors.

The Equal Protection Clause of the Fourteenth Amendment prohibits a prosecutor from challenging potential jurors solely on account of their race. *Batson v. Kentucky,* 476 U.S. 79, 89 (1986). A criminal defendant may establish a *prima facie* case of purposeful discrimination in the selection of a petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial. *Id.* at 96. To establish such a case, a defendant must show that he is a member of a cognizable racial group and that the prosecutor has used peremptory challenges to remove members of the defendant's race from the jury venire. The defendant must also show that these facts and any other relevant circumstances raise an inference that the prosecutor used the peremptory challenges to exclude jurors from the petit jury on account of their race. These relevant circumstances include the pattern of strikes and the prosecutor's questions and statements. *Batson,* 476 U.S. at 96-97. Once the defendant makes a *prima facie* showing, the burden then shifts to the prosecutor to offer a "race neutral explanation" for challenging the jurors. *Id.* at 97. The trial court must then determine whether the defendant carried his burden of proving purposeful discrimination. *Batson,* 476 U.S. at 98.

*Batson* has been extended to prohibit criminal defendants from engaging in purposeful discrimination on ground of race in the exercise of peremptory

challenges. *See Georgia v. McCollum,* 505 U.S. 42, 59 (1992). The prosecution's objection to the defendant's discriminatory use of peremptory challenges is sometimes referred to as a "reverse *Batson* motion" or "reverse *Batson* challenge." *Overton v. Newton*, 295 F.3d 270, 273 (2nd Cir. 2002). The question for this Court is whether petitioner's reverse-*Batson* claim is cognizable on habeas review.

The United States Supreme Court has repeatedly held that peremptory challenges are not of a federal constitutional dimension. *See U.S. v. Martinez-Salazar,* 528 U.S. 304, 311 (2000);*Ross v. Oklahoma*, 487 U.S. 81, 88 (1988); *Gray v. Mississippi,* 481 U.S. 648, 663 (1987); *Stilson v. United States*, 250 U.S. 583, 586 (1919)("There is nothing in the Constitution of the United States which requires the Congress to grant peremptory challenges."); *Georgia v. McCollum,* 505 U.S. at 57 ("This Court repeatedly has stated that the right to a peremptory challenge may be withheld altogether without impairing the constitutional guarantee of an impartial jury and a fair trial").

The United States Supreme Court recently rejected a similar challenge brought by a criminal defendant, who claimed that he was prevented from exercising a peremptory challenge after the trial court judge accused his counsel of seeking to remove a juror because she was a woman. *See Rivera v. Illinois,* 129 S. Ct. 1446, 1451-52 (2009). In rejecting the defendant's claim, the Supreme Court again noted that: "[B]ecause peremptory challenges are within

the States' province to grant or withhold, the mistaken denial of a state-provided peremptory challenge does not, without more, violate the Federal Constitution." *Id.* at 1454. The Supreme Court ruled that the trial judge's refusal to excuse this juror did not deprive the defendant of his constitutional right to a fair trial before an impartial jury. *Id.* The Supreme Court further noted that "the trial judge's conduct reflected a good-faith, if arguably, overzealous effort to enforce the antidiscrimination requirements of our *Batson*-related precedents. To hold that a one-time, good-faith misapplication of *Batson* violates due process would likely discourage trial courts and prosecutors from policing a criminal defendant's discriminatory use of peremptory challenges. The Fourteenth Amendment does not compel such a tradeoff." *Id.* at 1455.

In the present case, petitioner has failed to show that the trial court judge's decision here was anything more than a good-faith effort to enforce the antidiscrimination requirements of Batson-related precedents. Because this type of error does not violate due process, petitioner is not entitled to habeas relief on his first claim. *See Bell v. Jackson,* No.2010 WL 2161821, * 5 (6th Cir. May 28, 2010).

**B. Claim # 2. The right to be present claim**.

Petitioner next contends that he was denied his constitutional rights to be present at his trial and to confront his accusers when the trial judge removed him from the court after he had been disruptive.

At petitioner's competency hearing, petitioner used obscene language several times, interrupted the hearing, and indicated that he did not want to be a part of the proceeding, even voluntarily leaving the hearing. (Tr. 8/25/2004, pp. 4, 7).  At the pre-trial conference, petitioner again repeatedly interrupted the trial judge.  The judge admonished petitioner that if he did not control his conduct, he would not be allowed to be present in the courtroom. (Tr. 9/21/2004, pp. 3-5).  Before petitioner's *Walker* hearing began, the judge warned petitioner twice that she would not tolerate any disruptions or outbursts from petitioner and advised petitioner that if he did not conduct himself in an orderly fashion, his case would be tried without him being present in court.  Petitioner responded: "You already told me that.  I already know it."  The judge responded: "I am just reminding you". (Tr. 11/29/2004, p. 7).  The judge again warned that she would not tolerate petitioner or anyone else disrupting any of the proceedings. (*Id.* at p. 17).  At the conclusion of the *Walker* hearing, petitioner requested that he not be present at the trial.  The judge permitted petitioner to stay, but again warned him that if he misbehaved, he would be leaving the courtroom. (*Id.* at pp. 78-79).

On the first day of trial, petitioner asked a prospective juror during *voir dire*, "What you lookin' at me for?" and then continued to interrupt the judge. When the trial judge tried to speak with petitioner, petitioner responded, "Why don't you just do the trial without me?"  The trial judge responded that she was trying to prevent that [petitioner's absence from trial] from happening, but further

10

indicated that it was "likely that that's what's going to happen." (Tr. 1/29/2004, pp. 98-99).

Before testimony began in the trial, petitioner demanded to sit in the "bullpen" and stated: "You can have court without me. Just put me in the bullpen." Petitioner then engaged in an extended outburst, interrupting the judge and using obscene language. Throughout his diatribe, petitioner asked several times to have the trial continue without him. The trial judge again warned petitioner that if he could not behaved "in a civilized way" in front of the jury, he would not be present for trial. Petitioner responded that he did not want to be present for the trial, and the court brought in the jury while petitioner remained seated in the prisoner box inside the courtroom. (Tr. 12/1/2004, pp. 79-82).

When Ethel Woodger began to testify, petitioner repeatedly interrupted her testimony, by accusing her of lying. (Tr. 12/2/2004, pp. 6-7). After excusing the jury, the trial judge indicated that petitioner had decided he did not want to be present during the trial. As petitioner was being taken out of the courtroom, he responded, "Thank you." (*Id.* at p. 8).

After Ethel Woodger completed her testimony, defense counsel asked that the proceedings be wired to petitioner's cell. The judge indicated that she would attempt to do so, but that if petitioner continued to be disruptive, she would not accommodate him any further, noting, "I also get the sense that he is trying to derail this trial so that either we have a mistrial or if he's convicted the conviction

will be reversed." (*Id.* at pp. 63-64).  As soon as the audio feed was set up, the judge brought petitioner into court and advised him that he would be allowed to listen to the trial from his cell as long as he did not engage in any disruptive or improper behavior.  Petitioner interrupted the judge several times, used expletives, and stated that he did not want to hear the trial and that he wanted to go back to the Wayne County jail.  As petitioner exited the courtroom, he said, "Take me back. Thank you.  This shit don't mean nothing." (*Id.* at pp. 116-17).

A few days later, defense counsel stated on the record that he had spoken to petitioner and petitioner continued to state that he did not want to participate in the trial. (Tr. 12/6/2004, p. 3).

When petitioner was brought to the courtroom to hear the verdict, he repeatedly interrupted the reading of the verdict, even threatening the jurors. (Tr. 12/7/2004, pp. 10-14).  Finally, at petitioner's sentencing, he interrupted the proceedings a number of times, including interrupting and harassing the murder victim's brother during his victim impact statement. (Tr. 1/12/2005, pp. 6-16).

A criminal defendant has a right to be physically present at every stage of his trial. *Kentucky v Stincer*, 482 U.S. 730, 745 (1987).  However, a "defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the

courtroom." *Illinois v Allen*, 397 U.S. 337, 343 (1970).  Once lost, the right to be present can "be reclaimed as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings." *Id.*

Petitioner repeatedly engaged in a disorderly, disruptive and disrespectful manner throughout his pre-trial and trial proceedings.  Petitioner was warned several times by the trial court judge that if he acted in an abusive or disruptive fashion, he would not be permitted to be present in the courtroom for trial.  The judge even advised petitioner during the first day of trial that she was advising him to conform his conduct to the decorum of the courtroom because she was trying to prevent petitioner from being removed from the courtroom for bad behavior.

In this case, the state trial court's decision to remove petitioner from the courtroom during trial was not an unreasonable application of clearly established Supreme Court precedent regarding his right to be present in courtroom at every stage of his trial, in light of the fact that petitioner was removed from the courtroom only after he had been warned several times both before and at trial to behave appropriately and not to disrupt the proceedings, but he continued to be disruptive throughout the trial proceedings.  Accordingly, petitioner is not entitled to habeas relief on his second claim. *See Lewis v. Robinson,* 67 Fed. Appx. 914, 922 (6th Cir. 2003).

**C. Claims # 3 and # 4. The sufficiency of evidence claims.**

Petitioner next contends that there was insufficient evidence to convict him of first-degree felony murder, first-degree premeditated murder, and kidnapping.

Petitioner's challenge to his first-degree felony murder conviction has been rendered moot by virtue of the fact that this conviction was vacated at sentencing by the trial court judge. Article III, § 2 of the United States Constitution requires the existence of a case or controversy through all stages of federal judicial proceedings. "[M]ootness results when events occur during the pendency of a litigation which render the court unable to grant the requested relief." *Carras v. Williams,* 807 F. 2d 1286, 1289 (6th Cir. 1986).

Petitioner's challenge to the sufficiency of evidence for his first-degree felony murder conviction has been rendered moot by virtue of the fact that the trial court judge vacated this conviction at sentencing, which is the most relief that this Court could grant in petitioner's case. *See Hayes v. Evans,* 70 F. 3d 85, 86 (10th Cir. 1985); *McFall v. Rees,* 786 F. 2d 1165 (Table); No. 1986 WL 16539, * 1 (6th Cir. February 6, 1986); *Cumbo v. Eyman,* 409 F. 2d 400 (9th Cir. 1969); *See also Scott v. Bock,* 241 F. Supp. 2d 780, 793 (E.D. Mich. 2003)(petitioner's claim that trial court failed to quash felony murder count mooted when Michigan Court of Appeals vacated the conviction on appeal).

A habeas court reviews claims that the evidence at trial was insufficient for a conviction by asking whether, after viewing the evidence in the light most

favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Scott v. Mitchell*, 209 F. 3d 854, 885 (6th Cir. 2000)(citing to *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  Moreover, in reviewing a state court's application of the *Jackson* standard, a federal habeas court is required to determine whether the state court's application of the law in reviewing a sufficiency of evidence claim was reasonable. *See Tucker v. Palmer,* 541 F. 3d 652, 666 (6th Cir. 2008); *cert. den.* 130 S. Ct. 109 (2009)(citing 28 U.S.C. § 2254(d)(1)).  The scope of review in a federal habeas proceeding to the sufficiency of evidence in a state criminal prosecution "is extremely limited and a habeas court must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state and defer to that resolution." *Terry v. Bock,* 208 F. Supp. 2d 780, 794 (E.D. Mich. 2002).  A conviction may rest on circumstantial evidence and a federal habeas court reviewing the sufficiency of evidence to support a conviction need not rule out all possible interpretations of the circumstantial evidence. *Dell v. Straub,* 194 F. Supp. 2d 629, 647 (E.D. Mich. 2002)(internal citations omitted).  A conviction may be based upon circumstantial evidence as well as inferences based upon the evidence. *Id.*  Finally, the Court does not apply the reasonable doubt standard when determining the sufficiency of evidence on habeas review. *Walker v. Russell*, 57 F. 3d 472, 475 (6th Cir. 1995).

　　　　To constitute first-degree murder in Michigan, the state must establish that

a defendant's intentional killing of another was deliberated and premeditated.

*See Scott v. Elo*, 302 F. 3d 598, 602 (6th Cir. 2002)(*citing People v. Schollaert*,

194 Mich. App. 158; 486 N.W.2d 312, 318 (1992)).  The elements of

premeditation and deliberation may be inferred from the circumstances

surrounding the killing. *See Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 596

(E.D. Mich. 2001)(*citing People v. Anderson*, 209 Mich. App. 527, 537; 531 N.

W. 2d 780 (1995)).  Premeditation may be established through evidence of the

following factors:

    1. the prior relationship of the parties;
    2. the defendant's actions before the killing;
    3. the circumstances of the killing itself;
    4. the defendant's conduct after the homicide.

*Cyars v. Hofbauer,* 383 F. 3d 485, 491 (6th Cir. 2004); *Anderson*, 209
Mich. App. at 527.

Although the minimum time required under Michigan law to premeditate "is

incapable of exact determination, the interval between initial thought and

ultimate action should be long enough to afford a reasonable man time to

subject the nature of his response to a 'second look.'" *See Williams v. Jones,*

231 F. Supp. 2d 586, 594-95 (E.D. Mich. 2002)((*quoting People v. Vail,* 393

Mich. 460, 469; 227 N.W. 2d 535 (1975)).  "A few seconds between the

antagonistic action between the defendant and the victim and the defendant's

decision to murder the victim may be sufficient to create a jury question on the

issue of premeditation." *Alder v. Burt,* 240 F. Supp. 2d 651, 663 (E.D. Mich.

16

2003). "[A]n opportunity for a 'second look' may occur in a matter of seconds, minutes, or hours, depending upon the totality of the circumstances surrounding the killing." *Johnson,* 159 F. Supp. 2d at 596(*quoting People v. Berthiaume*, 59 Mich. App. 451, 456 (1975)). Premeditation and deliberation may be inferred from the type of weapon used and the location of the wounds inflicted. *See People v. Berry*, 198 Mich. App. 123, 128; 497 N. W. 2d 202 (1993). Use of a lethal weapon will support an inference of an intent to kill. *Johnson,* 159 F. Supp. 2d at 596 (citing *People v. Turner*, 62 Mich. App. 467, 470; 233 N.W. 2d 617 (1975)). Finally, premeditation and intent to kill may be inferred from circumstantial evidence. *See DeLisle v. Rivers,* 161 F. 3d 370, 389 (6th Cir. 1998).

In the present case, there was sufficient evidence for a rational trier of fact to conclude that petitioner acted with premeditation and deliberation in killing the victim. Petitioner informed Juaniva Woodger that he had waited two hours for her brother Michael to come home and had told people that he was going to kill her brother. Evidence that petitioner lay in wait for two hours for the murder victim to return to his home would support an inference that petitioner premeditated the victim's murder. *See People v. Johnson,* 113 Mich. App. 650, 661; 318 N.W.2d 525 (1982). In addition, petitioner's admission that he had planned on killing the victim would support a finding of premeditation. *See People v. Bauman,* 332 Mich. 198, 201-05; 50 N.W.2d 757 (1952). Petitioner

17

stabbed the victim in the chest or upper torso area.  Under Michigan law, premeditation may also be logically inferred from wounds inflicted on vital parts of the victim's body. *See Lundberg v. Buchkoe,* 338 F. 2d 62, 69 (6th Cir. 1964). Petitioner also told the murder victim's mother and sister not to bother calling for an ambulance, because the victim was already dead.  The fact that petitioner did not attempt to seek medical help for the victim and discouraged the victim's family members from doing so could lead a rational trier of fact to conclude that petitioner acted with premeditation and deliberation when he killed the victim. *See Delisle*, 161 F. 3d at 389 (circumstantial evidence of premeditation established by petitioner's failure to help victims after car drove into lake); *Healy v. Maggio,* 706 F. 2d 698, 700 (5th Cir. 1983)(leaving victim to bleed to death in the car a sign that the killing was intentional and not accidental).

In the present case, there was sufficient evidence for a rational trier of fact to determine that petitioner committed the murder with premeditation and deliberation.  Even if there was evidence presented which could have supported a verdict of manslaughter or even petitioner's self-defense theory, this Court must view the evidence in a light most favorable to the prosecution and the jury was not required to accept petitioner's version of the facts. *See Williams,* 231 F. Supp. 2d at 595.  Moreover, a federal court's review on habeas is very deferential to the state courts regarding sufficiency of evidence claims and this Court cannot say that the insufficiency of evidence claim resulted in a decision

that was contrary to, or involved an unreasonable application of *Jackson. Durr v. Mitchell,* 487 F. 3d 423, 448 (6th Cir. 2007).  Petitioner is not entitled to habeas relief on his third claim.

In his fourth claim, petitioner contends that the prosecutor did not establish the asportation element required for him to be convicted of kidnapping.

In rejecting petitioner's claim, the Michigan Court of Appeals noted that although asportation is a judicially required element of kidnapping through forcible confinement, it is not an element of kidnapping by secret confinement, the theory that petitioner was tried under. *Bryant,* Slip. Op. at * 4.  The Michigan Court of Appeals further noted that petitioner did not contest the fact that he willfully or maliciously confined or imprisoned Juaniva by force, without her consent, and without legal authority.  Thus, there was sufficient evidence to convict petitioner of kidnapping. *Id.*

To prove kidnapping by secret confinement, the prosecutor is not required to prove both secret confinement and a specific intent to secretly confine the victim.  Instead, a kidnapping may be premised on a showing of a confinement that is in fact secret or upon a showing of a forcible seizure or confinement with the intent to secretly confine, whether or not the confinement remains a secret. *People v. Jaffray*, 445 Mich. 287, 300-301, 519 N. W. 2d 108 (1994).  The Michigan Supreme Court in *Jaffray* discussed at length the concept of "secret

19

confinement":

> As we read Michigan's kidnapping statute in light of the authorities, we conclude that the essence of "secret confinement" is a deprivation of the assistance of others by virtue of the victim's inability to communicate his predicament. "Secret confinement is not predicated solely on the existence or nonexistence of a single factor. Rather, consideration of the totality of the circumstances is required when determining whether the confinement itself or the location of the confinement was secret, thereby depriving the victim of the assistance of others. That others may be suspicious or aware of the confinement is relevant to the determination, but is not always dispositive.
>
> *People v. Jaffray*, 445 Mich. at 309.

To the extent that petitioner contends that asportation should be an element of kidnapping by secret confinement, he would not be entitled to relief. State courts are the "ultimate expositors of state law." *Mullaney v. Wilbur,* 421 U.S. 684, 691 (1975). What is essential to establish the elements of a crime is a matter of state law. *See Sanford v. Yukins,* 288 F. 3d 855, 862 (6th Cir. 2002). Thus, "[s]tates are allowed to define the elements of, and defenses to, state crimes." *See Lakin v. Stine,* 80 Fed. Appx. 368, 373 (6th Cir. 2003)(citing *Apprendi v. New Jersey*, 530 U.S. 466, 484-87 (2000); *McMillan v. Pennsylvania*, 477 U.S. 79, 84-86, (1986)). A federal habeas court must therefore defer to a state appellate court's construction of the elements of state crimes. *See Coe v. Bell*, 161 F. 3d 320, 347 (6th Cir. 1998). The Michigan courts have concluded that asportation is not an element of kidnapping under a secret confinement theory and this Court must defer to the Michigan appellate courts'

determination on this matter.

Moreover, the evidence, when viewed in a light most favorable to the prosecutor, established that petitioner willfully or maliciously confined or imprisoned Juaniva Woodger by force and did so without her consent and without legal authority.  Juaniva tried to run down the street and scream for help, but petitioner grabbed her, held the knife to her side, and warned her if she tried to run again, he would kill her.  Petitioner took her down the street at knife point. Petitioner kissed her when a police car drove by so that Juaniva would be unable to alert the police.  After the police passed, petitioner threw Juaniva over a gate and dragged her into the backyard of a house.  When the homeowner came outside, petitioner warned Juaniva he would kill her if she said the wrong thing, so she told the man they were looking for her shoe.  When the man left, petitioner threw Juaniva over the gate and then jumped the gate himself. Petitioner then dragged Juaniva across the street to the wooded area of a cemetery.  When the police drove by a second time, petitioner pushed Juaniva to the ground, so that she could not be seen.  This evidence, if believed, established that petitioner deprived Juaniva Woodger of the assistance of others because she was unable to communicate her predicament to others.

Based on this evidence, a rational trier of fact could have found the petitioner guilty beyond a reasonable doubt of kidnapping under a secret confinement theory.  Accordingly, petitioner is not entitled to habeas relief on his

fourth claim. *See Gansz v. Jones*, 418 F. Supp. 2d 923, 931 (E.D. Mich. 2006).

## IV.  Conclusion

The Court will deny the petition for writ of habeas corpus.  The Court will also deny a certificate of appealability to petitioner.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. *See also Millender v. Adams,* 187 F. Supp. 2d 852, 880 (E.D. Mich. 2002).

22

Although this Court will deny a certificate of appealability to petitioner, the standard for granting an application for leave to proceed *in forma pauperis* (IFP) is a lower standard than the standard for certificates of appealability. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002)(citing *United States v. Youngblood*, 116 F. 3d 1113, 1115 (5th Cir. 1997)).  Whereas a certificate of appealability may only be granted if petitioner makes a substantial showing of the denial of a constitutional right , a court may grant IFP status if it finds that an appeal is being taken in good faith. *Id.* at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a).  "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. *Foster,* 208 F. Supp. 2d at 765.  Although jurists of reason would not debate this Court's resolution of petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and petitioner may proceed *in forma pauperis* on appeal. *Id.*

## V.  ORDER

IT IS ORDERED that the Petition for Writ of Habeas Corpus is **DENIED.**

IT IS FURTHER ORDERED That a Certificate of Appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **GRANTED** leave to appeal

*in forma pauperis.*

s/Marianne  O.  Battani

**HONORABLE  MARIANNE  O.  BATTANI**
**UNITED STATES DISTRICT JUDGE**

Dated: <u>July 9, 2010</u>

## CERTIFICATE OF SERVICE

I hereby certify that on the above date a copy of this Order was served upon the Petitioner, and Counsel for the Respondent.

s/Bernadette M. Thebolt

Case Manager